WM. C. OVERBY, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. A keno table is a gaming table, but the keeper of one cannot be punished under the law of 1839, (Thomp. Digest, 500, 1,) for the reason that the Legislature of 1879, Chapter 3099, has legalized it by requiring a license for such table.

2. The Legislature did not intend to punish criminally any of the acts licensed by its authority, especially when such acts were made the source of a portion of the revenue of the State.

Writ of Error to the Circuit Court for Duval county.

Section 11 of Chapter 3099, referred to in the opinion, provides that " no person shall engage in or manage the business, property or occupation mentioned in this section, unless " the license tax be paid to the Collector of Revenue and license issued by the Clerk of the Circuit Court, as provided therein.   The amount of a " keno" license is specified as set forth in the opinion.

The other facts are stated in the opinion.

*T. A. McDonell* for Plaintiff in Error.

*The Attorney-General* for The State.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court.

On the twenty-eighth day of May, A. D. 1880, the grand jury of Duval county presented an indictment against the defendant, William C. Overby, for keeping a common gaming house.   Such indictment charged that the defendant

" unlawfully did keep and maintain a certain common gam-
ing house, to-wit: in the City of Jacksonville, in said
county, and in Ledwith's block, on Bay street, in said city,
and in the said common gaming house, for lucre and gain,
on the day aforesaid, there unlawfully and wilfully did
cause and procure divers idle and evil-disposed persons to
frequent and come to play together at a certain game called
' keno ;' and in the said common gaming house, on the day
and year aforesaid, there unlawfully and wilfully did per-
mit and suffer the said idle and evil-disposed persons to be
and remain, playing and gaming at the said game of ' keno '
for divers, large and excessive sums of money," &c.; &c.

To this indictment the defendant plead not guilty.   On
trial the jury found him guilty, whereupon his attorney
moved the court to " arrest the judgment, vacate the ver-
dict, and grant a new trial " on the following ground :

1st.  That the indictment in said prosecution, upon which
the defendant was tried and convicted, does not set up facts
sufficient to constitute an offence against the laws of the
State of Florida.

2d.  That said indictment discloses on the face thereof
that the supposed offence, for which the defendant was
tried and convicted, is made lawful by the statute of the
State of Florida.

3d.  That the verdict was contrary to the evidence.

4th.  That there was not sufficient legal evidence to justify
the verdict.

5th.  That the indictment is vague, uncertain, and bad
for duplicity.

The motion was denied by the court, and the defendant
took an exception.

A bill of exceptions was made up, and this case is here
on writ of error.

The indictment was found under an act of the Legisla-

ture of 1839, (see Thompson's Digest, page 500, §13,) which provides that " if any person, by himself or herself, servant or other agent, shall keep, have, exercise or maintain a gaming table or room, or any house, booth, tent, shelter or other place for the purpose of gaming, or in any place of which he or she may have the charge, control or management, procure, suffer or permit any person or persons to play for money or other valuable thing or things, or to bet or wager on such as may play for money or other valuable thing or things, at any game whatsoever, he she or they so offending may be indicted," &c.

Were this the only statute of this State upon the subject, we should have no hesitation, under the evidence furnished in the bill of exceptions, in holding that the finding of the jury was correct, and in sustaining the judgment. " Keno " has frequensly been held to be a gaming table, and coming within the statutes provided against keeping gaming houses and gaming tables. In the case of Miller vs. The State, 48 Alabama, 122, the court, in their opinion, say : " Wherever a game is kept or exhibited by one person, who is said to *run the game*, who is the conductor or manager and presides over the same, and it is carried on by means or instruments, as in this case, by a wheel, balls, cards, &c., that necessarily require the use of a table, or something in the place of it, and is kept or exhibited that third persons may gamble at it, whatever be its name or description, it is a table for gaming, or gaming table, within the meaning of section 3621.  *  *  *  We therefore decide that the game called keno, as it was kept and exhibited in this instance, is to be regarded as a table for gaming."

In the case of Trimble vs. the State, 27 Arkansas, 355, the court in discussing the statute of that State prohibiting

the keeping or exhibiting gaming tables, or gambling devices, &c., use this language:

"The design of the statute was to suppress all such institutions, and we may safely say that no gambling table or device has ever been invented by man that is more pernicious in its influence than that of '*keno.*' It is very simple, a child can learn it as well as a grown person; this very simplicity is what renders it so dangerous to the laboring man or mechanic, who having a few dollars in his pocket wishes to try his luck, and not having time to learn the principles of other games, trusts blindly to 'keno.'"

The conclusion to which the court in that case came was that the game called and known as "keno" is a game a which money or property may be won or lost, and is a gaming device.

In the case at bar the bill of exceptions shows that at the time and place mentioned in the indictment, the defendant kept, maintained and exercised a gaming table and room, upon which table the game of "keno" was nightly played; that in such room there were from ten to fifteen tables used and employed by the players in playing the game of "keno;" that the persons playing such game bet and hazarded certain sums of money which went into a pool, less ten per cent., which ten per cent. went to the defendant, the keeper of the room and table, and the successful player who had won or kenoed on such chance game took all the money which had been so staked and bet on the chance of winning; that the game is a game of chance and hazard, and upon the betting of which money is lost or won; that during the times mentioned in the indictment persons to the number of from five to fifty would nightly assemble at such room and engage in the playing

of such game of " keno " for the purpose of winning money.

This evidence adduced upon the part of the State on the trial of this cause and appearing in the bill of exceptions justifies the opinion of this court that it is a gambling game, not played for recreation or amusement but played for the sole purpose of winning or losing money, and comes clearly within the provisions of the statute above cited.

But the defendant justifies under what he claims to be a license under Section 11 of the Laws of 1879, Chap. 3099. Sub-division second of Section 11 provides : " Keepers of billiard tables, bowling alleys or skating rinks, when such tables, alleys or rinks are kept for other than private use, shall pay in each county, and for each table, alley or rink, a license tax of fifteen dollars ; and all keepers of keno, or pool tables, or wheel of fortunes, shall pay in each county a license tax of one hundred dollars for each table or wheel." The term " license tax," as used in this section, is undoubtedly intended to mean the amount paid for the purpose of procuring a license which is to be issued by the Clerk of the Circuit Court, under the seal of the county " on filing the receipt of the collector for the necessary amount therefor," &c., as is provided by section thirteen of the same act. Under this section, it is claimed, the defendant procured a license to keep a keno table, and introduced a paper under seal of the county of Duval, which was received as evidence, and which seems to have been treated by the court and all parties as a license without exception or objection. That paper is in the following words and figures : " No. 774, Jacksonville, Fla., April 23, 1880, State and County License. Received of W. C. Overby one hundred and fifty dollars for State and county licenses for the

year ending December 26, 1880. Occupation keno. State license, $100 ; county, $50 ; clerk's fees, 25.

> "HENRY L'ENGLE,
> "Collector of Revenue Duval county.

"Countersigned and recorded by

> "T. E. BUCKMAN,

"[SEAL.]  Clerk of Court of Duval county."

If this paper, which is simply a receipt for the amount of the State and county license tax, signed by the Collector and countersigned by the Clerk of the Circuit Court, is conceded to be a license, then this defendant was justified in keeping one keno table under the said second sub-division of section eleven of the "Act for the Assessment and Collection of Revenue," passed in 1879. We do not determine as to the validity of this paper claimed to be a license, as no question was made upon the trial on that ground, and for the further reason that section 12 of the same statute provides the punishment to be inflicted upon the person carrying on such business or profession without such license. This section provides as follows : "Any person or persons who shall carry on or conduct any business or profession for which a license is required, without first obtaining such license, shall, except in such cases as are otherwise provided for in this act, be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than double the amount required for such license."

The Legislature by this act of 1879 legalized this game of "keno," and made it, by the license tax imposed, a source of revenue to the State, removing the inhibition upon it as a gaming table provided by the statute of 1839. We cannot believe that the Legislature would, or intended to punish criminally any of the acts licensed by its authority, and which it made the source of a portion of its revenue. Chiles vs. The State, 1 Texas, Ct. of Appeals, 27 ;

Houghton vs. The State, 41 Texas, 135; The State vs. Johnson, id., 504; Rodgers vs. The State, 26 Ala., 76.

It will be seen, however, by the 12th section of the act of 1879 as above quoted, that there is a penalty imposed for the carrying on of any business so to be licensed, when no license has been taken out. We must consider that the act of 1839, in so far as "keno" tables are concerned, has been amended by the revenue act of 1879, and that therefore the defendant was not guilty of the offence charged in the indictment, and the judgment of the court below must be arrested.